**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
--------------------------------------------------------X

ELIZABETH PITASSI,                          :
                                            :
                          Plaintiff,        :          **COMPLAINT**
                                            :
            v.                              :
                                            :          CV.
                                            :
CATTERTON MANAGEMENT                        :
COMPANY, LLC                                :
                                            :
                          Defendant.        :
                                            :
--------------------------------------------------------X

## I.    PRELIMINARY STATEMENT

1.    This is an action under the Americans with Disabilities Act ("ADAAA"), the

Connecticut Fair Employment Practices Act ("FEPA"), and Title VII of the Civil Rights Act of

1964 (as amended) 42 U.S.C. §2000e-5, as amended by the Civil Rights Act of 1991 (Title

VII").

2.    Plaintiff Elizabeth Pitassi alleges that Defendant L. Catterton Management

Company, LLC ("L. Catterton") discriminated against her on the basis of her disability,

including refusing to grant her a reasonable accommodation of her job duties.  It also

discriminated against her on the basis of sex and pregnancy in violation of Title VII and the

Connecticut Fair Employment Practices Act.

3.    Plaintiffs request a jury trial in this matter.

## II.    PARTIES AND JURISDICTION

4.    Plaintiff Elizabeth Pitassi ("Plaintiff" or "Ms. Pitassi") is a woman.  She is

currently thirty-nine (39) years old.  Her date of birth is December 3, 1985.

5.    Ms. Pitassi currently resides in Temple, Texas.  At the time of Ms. Pitassi's

employment, she resided in Stamford, Connecticut.

6.     At all times mentioned herein, the Defendant L Catterton ("Defendant" or "Catterton" or "the Company") was a global consumer-focused private equity firm organized under the laws of Great Britain with its principal place of business and headquarters in Greenwich, Connecticut.

7.     Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §12001 et. seq., the Americans with Disability Act as Amended (2008) ("ADAAA"), and as permitted under 42 U.S.C. §§ 2000e-(5), and 28 U.S.C. § 1331.  There is also diversity jurisdiction pursuant to 28 U.S.C. §1332 as Plaintiff demands more than $75,000 and her current residence is outside Connecticut.

8.     Pursuant to 28 U.S.C. § 1391 venue is proper within this District because the tortious acts took place in Connecticut, and the Plaintiff's contract of employment with the Defendant was to be performed in the State of Connecticut.

9.     Catterton currently employs approximately 400 employees.

10.     At all relevant times, Defendant Catterton has continuously employed more than 15 employees and is an employer with the meaning of Title VII (42 U.S.C. §2000 *et seq*., as amended by the Civil Rights Act of 1991), the ADAAA, Connecticut Fair Employment Practices Act.

11.     On July 18, 2024, Plaintiff filed a complaint of discrimination against Defendant, L Catterton, LLC, with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO") and the Equal Employment Opportunity Commission ("hereinafter EEOC").

12.     On November 7, 2024 CHRO issued a Release of Jurisdiction pursuant to Conn. General Stat. § 46a-100, which Plaintiff received on or about November 7, 2024.

13.     On December 5, 2024 EEOC issued a Notice of Right to Sue pursuant to 42 U.S.C. 2000(e)(5)(b).

14.     This action is filed within ninety (90) days of Plaintiff's receipt of both the Release of Jurisdiction and the Notice of the Right to Sue.

15.     All administrative prerequisites have been met under the ADA, Title VII, and the Connecticut Fair Employment Practices.

16.     Supplemental Jurisdiction is conferred pursuant to 28 U.S.C. §1367.

## III.    STATEMENT OF FACTS

17.     In January 2022, Catterton hired Ms. Pitassi as a Vice President employed in the company's Business Intelligence Unit.  She also took on responsibilities in Catterton's Environmental Social Governance ("ESG") group.

18.     Over the more than two years of her employment, Ms. Pitassi's performance was excellent.

19.     Catterton was a global firm with 17 offices on five continents.

20.     The vast majority of Company meetings were conducted remotely via Microsoft Teams.

21.     At all times during Plaintiff's employment with Catterton, it permitted its employees to work remotely.

22.     Some of the employees in the Business Intelligence, ESG Group, and Finance units worked remotely at nominal "offices" that were actually employees' homes.

23.     Of the Business Intelligence unit's approximately ten (10) members, several members of the Business Intelligence team worked in remote locations (including in London, Singapore, Buffalo, New York, and New York City) with the team members conducting the majority of their work via Microsoft Teams. The team members worked together cooperatively – accounting for the time differences between the East Coast and the other locations.

24.     Even for the half dozen employees working in the Greenwich office performing ESG and Business Intelligence work (including Ms. Pitassi), the group members typically conducted their meetings at their Greenwich desks.  They communicated remotely by Microsoft Teams, with occasional in-person meetings in the office.

25.     Jimmy Simmons ("Simmons") was the Director of Financial Operations for Europe.  He oversaw Ms. Pitassi's work in ESG.

26.     At all relevant times, Simmons lived in Paris, France, and worked remotely with Ms. Pitassi.

27.     Over a period of twenty years, Ms. Pitassi's long-term partner, Rick Donnette, served eleven tours of duty in Afghanistan with the U.S. Regular Army and the Army Rangers.

28.     In 2023, he accepted a position outside the military, based in California.

29.     This change permitted Ms. Pitassi and her partner to attempt to have a family. Ms. Pitassi was thirty-eight years old at the time.  Starting in the spring of 2023 and continuing until the end of her employment in the spring of 2024, Ms. Pitassi attempted to become pregnant and conceive a child.

30.     Because of her age, Ms. Pitassi was concerned about her reduced chances of getting pregnant.

31.     In addition, Ms. Pitassi has Crohn's Disease.  Crohn's Disease is an inflammatory bowel disease that may adversely affect any segment of the gastrointestinal track.

32.     Crohn's Disease also has a substantial effect on the major life activity of conceiving a child, fertility, and pregnancy.  Crohn's Disease may make it more difficult to become pregnant and also increase the risk of miscarriages.

33.     Crohn's Disease also reduced the fertility options available to Ms. Pitassi. Although IV-F treatment would increase the likelihood of Ms. Pitassi conceiving a child, it was not an option due to her Crohn's Disease.  Fertility drugs would also increase the likelihood of Ms. Pitassi's ability to conceive a child, but this was also not an option due to her Crohn's Disease.

34.     In addition, during the period that Ms. Pitassi was trying to conceive, she needed to stop taking one of her medications for Crohn's Disease that would pose a risk to her fetus. This made her subject to a greater likelihood of flare-ups of her condition during this period of time and during any ensuing pregnancy.

35.     In order to maximize her chances of conceiving a child, Ms. Pitassi needed to be carefully monitored and be present in the same location with her partner.

36.     In its Employee Handbook, Catterton indicated its commitment to provide reasonable accommodations to women relating to pregnancy and its related conditions.  It stated:

> **ACCOMMODATIONS FOR EMPLOYEES WHO ARE PREGNANT POLICY**
> Employees who are pregnant and require a reasonable accommodation in order to perform the essential functions of their position during or following their pregnancy are urged to contact the Director of  Human Resources and explore available  options. Such accommodations could include additional unpaid leave, assistance with physical  demanding tasks, or more frequent break-times, among other things.  Any employee who seeks an accommodation will be asked to discuss the issue with a company representative, who will explore  with  the

employee and the employee's supervisor the range of possible accommodations.

37.     In early September 2023, Ms. Pitassi disclosed her efforts to conceive a child and the complications presented by the Crohn's Disease condition to both of her managers - Jimmy Simmons (her ESG supervisor) and Matt Johnson ("Johnson") (from Business Intelligence).

38.     She asked both managers if she could adjust the current in-person schedule (of four days per week) and begin to work remotely full time as a reasonable accommodation to her efforts to conceive and carry a child and the difficulties due to her Crohn's Disease.

39.     Ms. Pitassi also told the two managers that she was seeking this accommodation for one year only and then planned to return to our Greenwich office.  She also told them that she was willing to travel to Greenwich when necessary.

40.     Both Simmons and Johnson understood the accommodation issue and the plan for pregnancy.  They both told Ms. Pitassi that the proposed reasonable accommodation to Los Angeles for a year would be satisfactory with them.

41.     Ms. Pitassi's supervisors, Simmons and Johnson, both reported to Anne Kyprianu ("Kyprianu"), the Global Head of Finance.

42.     But when Ms. Pitassi's reasonable accommodation proposal was submitted to Kyprianu, it was rejected

43.     Kyprianu's rationale for rejecting the accommodation request was twofold:

   a.   it would "splinter" the group, i.e., it would foster resentment that she had been permitted to work remotely, and

   b.   it would trigger everyone on the team to request working remotely.

44.     Ms. Pitassi followed up directly with both Kyprianu and Human Resources and

attempted to engage in the interactive process.  Her accommodation request was rejected.

45.    Kyprianu's rationale was completely pretextual.  Many of the individuals on the Business Intelligence and ESG groups and in the Finance Department were already working remotely and had flexible schedules.  There would be neither resentment nor any "bandwagon" effect because most of the staff were already permitted to work remotely for reasons having to do with a woman's efforts to conceive and carry a child, that was complicated by her disability.

46.    Catterton maintains 17 offices all over the world.  Ms. Pitassi's team and co-workers resided all over the world, and she worked with them every day without any hardship.

47.    Catterton's refusal to accommodate Ms. Pitassi's reasonable accommodation request clearly created an obviously discriminatory situation where individuals without issues about conceiving and carrying a child were provided the flexibility and opportunity to work outside the Greenwich Headquarters, but women seeking flexible hours and remote work are denied the same opportunity.

48.    Catterton is an enormously wealthy company.  It has over $35 billion in assets under management.  Based upon the totality of the circumstances, Ms. Pitassi's proposed accommodation would not have caused an undue burden to Catterton.

49.    Ms. Pitassi loved her job and wanted to continue working at Catterton.

50.    Defendant's refusal to provide her with reasonable accommodation forced her to make a completely unnecessary choice between her desire to conceive and carry a child while she was still capable of conceiving and maintaining her career.

51.    In November 2023, after Ms. Pitassi advised Catterton that she was going to move to California, Defendant agreed to permit her to maintain her employment and allow her to work remotely from California until March 29, 2024.

52.     Between November 2023 – March 29, 2024, during the period that she was working remotely,  Ms. Pitassi continued to perform her work competently and at a high level.

53.     In February, Ms. Pitassi renewed her request to Catterton that she be permitted to continue working remotely in order to accommodate her efforts to conceive and carry a child to term despite the complications.

54.     Her request was again refused.

55.     On March 29, 2024, Catterton terminated Plaintiff's employment.

56.     As a result of her discharge, Plaintiff has suffered lost earnings and benefits, and the benefits of her Carried Interest Agreement with Catterton.

57.     As a result of her discharge, Plaintiff has suffered emotional distress.

**COUNT ONE:**          **(Discrimination on the Basis of Sex and Pregnancy – Title VII).**

58.     Paragraphs 1 - 57 are incorporated herein as paragraphs 1- 57 of this First Count.

59.     Defendant discriminated against Plaintiff on the basis of her sex and pregnancy, to wit, her efforts as a woman to conceive and carry a child to term when it denied her the opportunity to work remotely, permitted other similarly situated persons who were not attempting to conceive and carry a child to term to work remotely.

60.     Defendant's denial of the opportunity to work remotely improperly forced Ms. Pitassi to have to give up her job in order to attempt to have a child.  No similarly situated males were put in this position.

61.     Defendant's termination of Ms. Pitassi's employment was motivated by her gender, to wit, her child-bearing capacity.

62.     Defendant's conduct was in deliberate and reckless disregard of her statutory rights.

**COUNT TWO:    (Sex and Pregnancy Discrimination – FEPA , Conn. Gen. Stat. §46a-60(a)(1), (b)(1), and (b)(7)).**

63.    Paragraphs 1- 62 are incorporated herein as paragraphs 1- 62 of this Second Count.

64.    Defendant discriminated against Plaintiff on the basis of her sex and pregnancy, to wit, her efforts as a woman to conceive and carry a child to term when it denied her the opportunity to work remotely, permitted other similarly situated persons who were not attempting to conceive and carry a child to term to work remotely.

65.    Defendant's denial of the opportunity to work remotely improperly forced Ms. Pitassi to have to give up her job in order to attempt to have a child.  No similarly situated males were put in this position.

66.    Defendant's termination of Ms. Pitassi's employment was motivated by her gender, to wit, her child-bearing capacity.

67.    Defendant's conduct constituted "discrimination on the basis of sex" as that term is defined under Conn. Gen. Stat. §46a-51(17) of the Connecticut Fair Employment Practices Act.

68.    Defendant's conduct was in deliberate and reckless disregard of her statutory rights.

**COUNT THREE: (Disability Discriminatory  - ADAAA, 42 U.S.C. §12001 *et. seq.*)**

69.    Paragraphs 1- 68 are incorporated herein as paragraphs 1- 68 of this Third Count.

70.    Ms. Pitassi's Crohn's Disease is a disability that has a significant effect on the major life activities of fertility, pregnancy, conception, and/or becoming pregnant.

71.    Ms. Pitassi is a qualified individual with a disability.

72.    Plaintiff Elizabeth Pitassi is a qualified individual with a disability within the

meaning of the ADAAA.

73. Defendant denied Ms. Pitassi's request for a reasonable accommodation.

74. Ms. Pitassi would have been able to continue performing all of the essential functions of her job if defendant had provided her with the reasonable accommodation.

75. Defendant's denial of the reasonable accommodation improperly forced Ms. Pitassi to have to give up her job in order to attempt to have a child.

76. Ms. Pitassi also has a record of disability, about which she made Catterton aware on several occasions.

77. Defendant's termination of Ms. Pitassi's employment violated the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act.

78. Defendant's conduct was in deliberate and reckless disregard of her statutory rights.


**COUNT FOUR:   (Disability Discriminatory FEPA - Conn. Gen. Stat. §46a-60(b)(1)).**

79. Paragraphs 1- 78 are incorporated herein as paragraphs 1- 78 of this Fourth Count.

80. Plaintiff Elizabeth Pitassi is "physically disabled" within the meaning of the Connecticut Fair Employment Practices Act.

81. Defendant denied Ms. Pitassi's request for a reasonable accommodation.

82. Ms. Pitassi would have been able to continue performing all of the essential functions of her job if Defendant had provided her with reasonable accommodation.

83. Defendant's denial of the reasonable accommodation improperly forced Ms. Pitassi to have to give up her job in order to attempt to have a child.

84. Ms. Pitassi also has a record of disability, about which she made Catterton aware

on several occasions.

85.    Defendant's termination of Ms. Pitassi's employment violated the Connecticut

Fair Employment Practices Act.

86.    Defendant's conduct was in deliberate and reckless disregard of her statutory

rights.

**RESPECTFULLY SUBMITTED
THE PLAINTIFF**

By: _Lewis H. Chimes_ _____
    Lewis H. Chimes (Ct 07023)
    Law Office of Lewis Chimes LLC
    45 Franklin Street
    Stamford, CT 06901
    T: 203-324-7744
    F: 203-969-1319
    lchimes@chimeslaw.com

11

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays that this Court take jurisdiction over this case and grant damages in excess of $75,000 and judgment against Defendant.  Plaintiff prays that the following relief be awarded:

      a.    damages for economic losses, including lost wages and benefits, that she has suffered as a result of Defendant's conduct;
      b.    damages for the emotional harm she has suffered;
      c.    damages for injury to her reputation;
      d.    attorneys' fees and costs;
      e.    punitive damages;
      f.    pre-judgment and post-judgment interest on her economic losses; and
      g.    such other equitable relief as the Court deems appropriate, including the award of front-pay.

Dated: February 4, 2025
      Stamford, Connecticut

                                    **RESPECTFULLY SUBMITTED**
                                    **THE PLAINTIFF**

                                **By:**  *Lewis H. Chimes*
                                    Lewis H. Chimes (CT07023)
                                    Law Office of Lewis Chimes LLC
                                    45 Franklin Street
                                    Stamford, CT 06901
                                    T: 203-324-7744
                                    F: 203-969-1319
                                    lchimes@chimeslaw.com

Please enter my appearance on behalf of the Plaintiff.